Joyner v. City of Atlanta Chief George Turner Van Hobbs and the case number is 22-13728. Mr. Williams, I see that you have reserved five minutes for rebuttal and you may proceed when you are ready. Yes, Your Honor. May it please the Court. My name is Mario Williams. I represent Terry Joyner, who is the plaintiff appellate on this particular appeal. We are here today after a full jury trial, but the issues are kind of divided as to us appealing certain things that happened at the jury trial and certain things that happened at summary judgment. I'd like to start off with our appeal dealing with the motion for directed verdict, but before I talk about that, I just want to talk about what we argue is indisputable evidence at trial. This is the situation where, just real briefly, and I know you are all up to speed on this, Atlanta is divided into six zones, APD. Each zone has a major and a captain. This is a situation where Chief Turner, former Chief Turner, came into trial and said and this is direct evidence, as we contend, that he reserves a certain number of positions for a particular race and he is not going to consider the qualifications of another race if you don't match the race. For example, in Terry Joyner's case, he specifically said and agreed that he excluded Terry Joyner because he was white, because that particular position was reserved for an African-American. But then he backtracked on it. Well, I don't think he, Judge Carnes, I don't think he backtracked. What the district court judge said, and we have to hold her to this, is that she said, hey, look, he did say on three different occasions, selected positions, reserved positions based on race. But then he clarified and said he considers other factors. Our argument is that that is classic motivated by race under Title VII. Title VII, the express language, and we don't need to even go to case law, because Your Honor's no statute of limitations. Your argument, in effect, is a mixed motive argument? Yes, Your Honor. Is that the district court, in this case, acknowledged, yes, he did say he reserved seats based on race, but he clarified, that's the phrase, clarified and said he considers other factors. At that point, liability is established. I cited the Connell case only to say, since 1991, that the amendment basically states in Title VII race discrimination, mixed motive, once you establish liability, once you demonstrate that a particular government actor was motivated in part by race, the only other issue left, and I phrase it as, we should have just talked about damages, is whether or not you can limit liability based on the fact that you can show that the same decision would have been made absent the racial taint. And so our position is, the directed verdict should have been granted. Then we should have had a discussion on whether or not liability could be limited to possibly, because attorney's fees, costs, injunctions, are not... But under that standard, could literally any person who was a different race than what you say the chief was setting aside for, right? So what's the argument here, you know, if he was setting aside for a black person, could any person in the department, no matter how unqualified or no matter what a lack of interest they showed, bring a claim and win under a mixed motive theory? Not necessarily, because you have to rank qualified lieutenant in order to actually be accepted as a captain or a... So could any person who is in that category of people who's technically qualified come in and win a mixed motive judgment? You know, this is a very unique situation. I'm going to ask you a question directly, Judge Graham. I believe that any lieutenant who is absolutely excluded from consideration, and this is the point I tried to make so adamantly in the briefs. We're not talking about a situation where we're putting one qualified person up against textbook employment discrimination. We're talking about being excluded from consideration. So I believe that anybody who qualified to be a lieutenant, who is up for, can be a captain or major, could have brought this lawsuit and said, hey, look, it's not me saying that I'm more qualified. This is what went wrong at the trial, in my opinion. I tried to stop this. This is not me saying, hey, I'm more qualified than him, even though we're different races. This is me saying, if you have three seats available, and all of them are reserved for black people, then I don't get a chance, and vice versa. And that's the thing. A lot of people can say- But counsel, you're moving away from your concession as to what the judge said the testimony was, which is, and I considered other factors. Okay. If he considered other factors, then nobody was excluded solely because of race. Now, when you look at the testimony closely, he admits, and this is on, he admits that Zone 2, where Terry Joyner said he should be, he admits, he says, I didn't consider him at all because he was white and that position was reserved. Well, Zone 2 is a unique situation because Terry Joyner was working at Zone 2, and don't we have Turner's testimony that even if he had considered Officer Joyner, oh, I'm getting the title wrong, if he had considered him for promotion, he would have moved into another zone. So we don't look at Zone 2, do we? We look at Zone 2, and we look at, we look at two things. But if Turner has told us he would move people, that when he promoted them, you had to go to a different zone, so why are we looking at Zone 2? I get that we look at other zones. We look at Zone 2 because that's Turner's testimony at that time. That's just, that's a credit, but the issue is, and this is classic quota stuff. You said credibility, you were about to say credibility issue, but this went to a jury. No, no, no, what I'm going to say is we look at Zone 2 because he admitted that he reserved it for, he excluded, you can say even if he would have done this, that's an exception, that's what he's trying to say. But we don't even get there because he admitted under oath he wouldn't even consider Terry because he was white. And this is a, people are trying to, there was a situation where it was intimated that this is a reverse discrimination case. No, it's not, it's a race discrimination case. The civil rights, and I don't want to get preachy, civil rights movements and everything else, you don't have a black person who's qualified for a captain position and then exclude them because the outgoing captain's white. See, that's the reverse effect of this situation. This came from Pennington and New Orleans. I grew up in New Orleans. It came from Pennington. They did the same thing there. He brought it in the late 2000s, early 2000s, and Chief Turner continued it. This is an absolute quota system. There's no doubt about it. And when you have the district court saying, Mr. Williams, okay, he did say he reserves and selects certain seats for races to the exclusion of others, but he considered other factors. What does Title VII say? If you can prove motivating factor means at least one factor, even if there's others, that are considered as impermissible race discrimination, then you land on the motivating factor. Okay, what about the fact that in dealing with this promotion, we're in a world where this is now discretionary. You don't sit for the testing. Turner gets to decide who he's going to appoint. There's no application process. But he informally would like look around, assess what he thought of the candidates. But also, these candidates were coming to him and saying, I want this promotion. What about the fact that he said, I didn't consider Mr. Joyner for this position because number one, he didn't tell me he was interested, but also because he'd had some performance problems. So, and the jury has said, do you find by a preponderance of the evidence that defendant the City of Atlanta denied Terry Joyner an appointment to captain on December 24, 2014? The answer was no. Okay, that brings up three issues. Number one is that we dealt with the whole jury instruction. It doesn't have anything to do with race. But you said if he says, what was that first part? This is not a situation where you sit for a test because you want the promotion to captain. This is a discretionary function. Yeah. So, he didn't raise his hand for it, essentially. Yeah. But knowing Terry Joyner had always said to his direct report that he wanted one, I don't think anybody went directly to Chief Turner. Chief Turner testified that there were people who would make an appointment with him to discuss what can I do to get promoted and that Terry Joyner did not. I think that's, first of all, and it goes to what happened with the judge sending back the evidence to the jury. Appointment authority, according to the city charter, and we tried to introduce this into, said, hey, if you're going to send that part back, you can't discriminate based on race, even if it's appointment authority. The city charter says it. That was the issue with the judge only sending, there was a stipulation of material facts in this case. And it dealt with the city charter. The jury still was confused enough after the closing argument to come back and say, hey, show us the city charter that talks about appointment authority. We found the city charter section that says you can't appoint and use race as an appointment authority. Even in appointment authority, there can be no discrimination based on race. Even with discretionary appointment authority, you can't do it. She refused to send it back. She sent back, ripped off two pages of the charter and sent it back in isolation, even though the jury said, send me the portions of the city charter that deal with appointment authority. But as I understand it, the portions that she sent back, the parties had agreed that that portion would be sent back. No, no, that's the whole confusing aspect, and I disagree with that. If you already have stipulated facts that deal with the city charter, and you hear all the evidence and you go back to the jury and you say, okay, we're still confused. We want to know what part of the charter deals with appointment authority. Then one, there's a lot of case law out there that says you just don't even have any business sending evidence back to the jury after the close of evidence. That's a different issue. But two, if you are going to try to educate the jury on what they really have a question about, then send the part of the charter that deals with appointment authority, because that's what they're asking about. All right. You have exceeded your time, but you still have five minutes for rebuttal. There you go. Ms. White. Okay. Please, the court. My name is Halima Horton White, and I, along with co-counsel Jamala McFadden, represent the city of Atlanta. The jury's verdict should be affirmed. Document number 329 expertly explains why the jury verdict form was correct and why the jury's verdict should be affirmed. And key in this case is that this is an individual disparate treatment case. And even under a mixed motive analysis, at all times, the plaintiff, Joyner, bore the burden of proving that he was subjected to an adverse action and that race was a motivating factor in the adverse action. Joyner was not able to move past the first element, that he was subjected to an adverse action. And I believe in our brief, we did point the court to T. Turner's testimony that Joyner was nowhere in consideration for any captain position at the time of the order in question. The question, or the issue in response to that is, why wasn't he considered? And the jury heard so much evidence that ... They also heard evidence that the chief said, out of his mouth evidence, that he didn't consider black people to replace white vacancies and white people to replace black vacancies at the captain's level. So the jury has the role of weighing that conflicting evidence in terms of the reasons Joyner wasn't considered. And so they made the decision that he never suffered an adverse action. And ... Did they or did they follow your argument, oral argument, that if the chief did this, it ain't the first time? That's what H.W. Bush did when he appointed, you said Thurgood Marshall replaced Clarence Thomas, but you meant Clarence Thomas to replace Thurgood Marshall. What was your point in making that argument? Trying to persuade the jury to rule against the plaintiff. And the key allegation is the plaintiff was excluded because of race. And you argued to the jury, if that happened, that's not the first time President Bush did that when, in effect, he replaced Thurgood Marshall in the Supreme Court with another black person. Therefore, the jury should consider, should reach what conclusion? It's okay to discriminate on the basis of race because the president did it in making an appointment according to your view? Well, then tell me, every argument, whether we think about it consciously or not, has a major premise, a minor premise, and a conclusion. The minor premise was Bush did it when he replaced Thurgood Marshall with Clarence Thomas. What is the major premise behind your argument you wanted the jury to accept? It's okay to discriminate on race if a president's done it in an appointment? No, that was not the point at all. However, at some point, the jury is going, if they had gotten all the way down to the verdict form, then you have damages. Are they going to give punitive damages? Are they going to do all this? Should they punish the chief for what he did? And you're saying that people shouldn't be punished for discriminating on the basis of race because you think one president did that in making an appointment to the Supreme Court? Well, not just one, but... So that was the only purpose. If we do get down to damages, he's not a bad person because he did... So if I read two pages before and two pages after, I'll see you were talking about damages? Well, you certainly won't see any of the things that it was suggested because Your Honor has framed it correctly. I only said it wouldn't be the first time. Well, but what's the point of saying it won't be the first time? You're arguing for the jury not to find your client discriminated on the basis of race. And it appears you said if he did so, it wouldn't be the first time the president of the United States did it in appointing somebody to the Supreme Court. And therefore, it's all right. No, just not as horrible. As it was made out to be. I don't understand that. Why does the fact that the president's done it, the president who's not subject to Title VII, Section 1981, or anything else we can imagine, why would it be not so bad if what the chief was accused of doing here, excluding somebody solely because of their race, if that was the first, it wasn't the first time? I just don't understand. It bothers me that the city of Atlanta would make that representation to citizens of Atlanta in a trial. Yeah, that was, and so I definitely receive what you have said. And one of the ways it was framed is that when you're dealing with the highest levels of government, you've got to maintain some public trust. So it's okay to discriminate on the basis of race if it's necessary to maintain public trust? Well, people have to feel, and with police officers, that they are reflected in the force in some way. And if that requires racial discrimination, more to it. No, and so there was never a preponderance of evidence in the jury's eyes that race was a motivating factor in this particular decision. So that's where we are here. But how can you make that representation in light of your closing argument? Well, because the closing argument went 45 minutes, and that particular segment went one minute. And so the closing argument focused on the fact that Joyner was nowhere in the running for performance reasons. He had just been appointed by Chief Turner to command the elite fugitive squad unit, and he fumbled the ball on that to the point where Chief Turner's commanders underneath him were demanding that Terry Joyner be removed from there. And so Chief Turner just had strong evidence that Terry Joyner couldn't handle those kind of responsibilities, and that he couldn't even consider him for a captain position after being forced to move him out of the fugitive squad unit. So he couldn't consider Joyner for this and keep the city safe. And he knew that he had recent evidence that Joyner had just embarrassed him at a high of these serious crimes. What do you mean when you say embarrassed him? Chief Turner testified that the commanders underneath him had demanded that Joyner be removed from the fugitive squad unit, and that was mere months before Chief Turner made the decisions at issue regarding which captains he would choose. So you weren't referring to the fact that Mr. Joyner kept reporting Mr. Turner for alleged wrongdoing? No, and this was not a retaliation case, and so that shouldn't even have gone as far as it did. Well, it was a retaliation case at the beginning, right? Right. And so why isn't changing someone's flex time schedule in a way that keeps them from having a second job that provides for their family, why isn't that an adverse employment action? Well, even if your flex schedule is changed, you have other options for part-time jobs, and considering what other work you are allowed to do outside the police force is not the criteria for determining if something is an adverse action. But why, if you could show that a boss changed his employee's schedule intentionally to keep him from working a second job, why wouldn't that be an adverse employment action? Which is not the facts here. I'm not asking you to concede that whether it's the facts here, I'm just saying in the abstract, would a boss who knew that their employee's current schedule allowed a second job that was important to him and his family, and change the schedule so that that job would not be an adverse employment action, why wouldn't that be an adverse employment action? Because in the context of a job, the decision maker has to do what is best for that particular job. But I didn't say they did it because it was best for that job. I said they did it in order to punish the employee for speaking out against them. Well, what I'm trying to say is that you can't consider extraneous information about whether you would be able to do some other job, but in deciding whether something is an adverse action, you're looking at that job. So what case do you have that defines it that narrowly? So there are so many cases that narrow what an adverse action is. So we're talking about material changes in terms and conditions of employment, not material changes in other employment. But aren't the hours that you work material to that? I mean, I see officers around the city all the time directing traffic or doing different things that I know are important for them. Otherwise, they wouldn't be up at 6 in the morning standing on the streets doing this. Isn't a material part of your job what it allows you to do outside of that job? Well, no, because we're looking at that particular job. And of course, there are so many options for part-time jobs or other work besides just the one that he held at that time. What if the schedule was changed so that he worked from, let's say, three hours starting at 6 a.m. and then had a 15-minute break, right? If the schedule was just set so that he couldn't possibly work a second job and that was intentionally done in order to punish him for statements, would that be a material change such that it would be an adverse employment action? Perhaps, we would have to look at all the circumstances, but no, that would not be an adverse action because it has to relate to the job in question. And even if the court were to consider that that was an adverse action, in this case, there was so much evidence that a causation was not there and that there was a legitimate non-retaliatory reason for that. Joiner was constantly MIA, and Chief Van Hobbs testified about this during his testimony at trial, that there was documented evidence that Joiner was not responding to pages, that Joiner would respond to pages from his subordinate sergeants, but not from Van Hobbs two levels above him. And so, that was one of the issues in terms of why he was not allowed to remain on a flexible schedule. He abused it. What if somebody was working the day shift and that was the shift they wanted, and in retaliation, they were moved to the night shift and that created a problem with their family? They would view that, in my hypothetical, as a transfer to a less desirable position. Would that not be an adverse action? Well, anybody can view anything anyway, but the fact was that his pay remained the same, that his schedule was not changed. Oh, and in this case, he actually never got the change schedule that was at issue. That never even went into effect. Got the change schedule. The one did not, but the loss of flex time did go into effect, correct? Yeah, and that was, yes. And so... And so, if he views and can testify that that is a less desirable position to take away flex time, that's not an adverse action? Perhaps, but it was necessary to protect the citizens of Atlanta here because... That wasn't why the judge dismissed the claim, though, right? I mean, but we can affirm for any reason that's justified in the record, and in this case, we did argue that it's necessary to keep the citizens safe in terms of Terry Joyner abused flex time. And so, there was also evidence of that, both in the summary judgment record and at trial. Thank you. Mr. Williams, you have five minutes. I'll quickly point out that my colleague, who I like a lot, actually, we've done other cases, but I disagree with completely, but she's making my point on this whole issue of Terry Joyner's a threat to public. This is a man who actually drug a person out of a fire home, has won all kind of awards. But let's just assume that everything they're saying true about his personal character, and he's a danger to the public, that's making the same decision without the constitutional pain. That goes to limiting liability, not whether the person was motivated by race and making the employment decision. Again, this is not your typical employment setting. This is a situation where, in fact, I don't even know if Chief Turner could make the same decision, because he's already admitted he excludes you from even considering you based on race. But the point is, is that if you have a policy that's so unique as this, where I'm telling you, hey, you're white, this position is black, and vice versa, so your qualifications don't even come on the board. It is the threshold issue. Your race is the threshold issue as to whether I even match up your qualifications to take this position, because you're not of the same race. Then once we get past that, you can go and talk to the jury all day long about how he's a threat to the public, and he embarrassed the chief. But that's just limiting liability for being motivated by race. I agree, frankly, that all of that is very troubling. But my question, one of my questions goes to a kind of conditioned precedent. In this situation, don't we have evidence that he didn't put his name on the board? No, that's not the evidence. Judge, go back and look at this, and I need to probably go back and look at it. My understanding of the facts of this case, there's no application process. In fact, Ernest Finley, when I traveled down to Montgomery to do the polls and became the chief of Montgomery, said the whole process was a joke. It was a joke. There was no application process. There was no formal meeting to say, hey, meet at 10 o'clock, and I'm going to figure out who wants these positions. Ernest Finley said he didn't know what was going on. The deputy chiefs would meet, Chief Turner would just throw out some names, and that's it. He said it was like a joke. There was no situation where Terry Joyner was required or knew of some formal process or even informal of saying, hey, you know, if you really want this job, you need to go up to the chief. No, that's not the case. And look at Ernest Finley's deposition. He calls the process of applying for positions higher than lieutenant a joke. Now, adverse employment action. Real quick, because that goes through a lot of things. Burlington makes clear context matters. The evidence on record demonstrates, what does it demonstrate? And anybody familiar with law enforcement knows this. Everybody has what they call EJs, extra jobs. That's how law enforcement supplement their income. That's how they say, hey, look, I'm going to have an EJ. Terry Joyner, 15 years of flex time. He reports ticket fixing on behalf of Chief Turner. Within seven days, his flex time's gone. Now, classic law textbook is retaliation temporal nexus. You have to show you get there's 11 circuits out there that allow some years to do. But typically, you need four months or less to even be in the in the in the house on that, you know, for you all to even really take it serious. We have less than a week. We have less than a week. And the best argument is, well, they really didn't reduce his actual pay. No, and not only that, you stop them from going to get his kids, because the argument was and the judge said, well, he actually he went and complained about the child care. So they allowed him to do it two times a week. But his testimony is every other week, I need it three times and they wouldn't let me do it. What about the argument that he was proximity is important, but it's obviously not enough. What about the argument that there were other important reasons of public safety that his flex time was taken away? What's your response to that? The judge at all, but proximity is enough to get us to a jury trial. They can make that argument. Remember, this is the issue of adverse employment action. First Amendment was summary judgment. So that that's a my argument would be that's a conflict in evidence that needs to be resolved by a jury. Now, we do have the temporal nexus. We do have a serious offense because the ticket fixing, if you look at Hobbs's deposition,  He just threw them in a drawer. I asked him, should you report yourself? But that's the issue is summary judgment. It's our benefit. We're the non-movement. So let a jury decide whether or not they believe that they retaliated and took his flex time within a week because he was a danger to the public. Thank you. Thank you both. We have your case under advisement. And of course, court is in recess until tomorrow morning. Thank you.